# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| IN RE: | In Proceedings |
| | Under Chapter 7 |
| SCOTT R. HEWITT, | |
| | Case No. 16-30375 |
| Debtor(s). | |

## OPINION

This matter is before the Court on a motion filed by the chapter 7 trustee for turnover of any post-petition voluntary separation incentive payments ("VSI payments") payable to the debtor from the U.S. Department of Defense. The debtor opposes the motion on the basis that such payments are excluded from the bankruptcy estate under 11 U.S.C. §§ 541(a)(6) or 541(c)(2). Alternatively, the debtor contends that even if the payments constitute estate property, they are nevertheless exempt under applicable state law as retirement benefits. For the reasons set forth below, the Court finds that the VSI payments are excluded from the bankruptcy estate under § 541(a)(6).[1]

## *Facts*

The parties filed a Joint Stipulation of Facts, in which they agree to the following: Debtor is an intelligence/counter-intelligence officer who served on active duty in the U.S. Army for over fourteen years. In September 1992, the debtor was offered the opportunity to separate from active duty and receive VSI payments. Because he was concerned that he would not be permitted to serve a full twenty years of active duty – and thereby qualify to receive traditional military retirement pay – the debtor accepted the offer. In accordance with the debtor's decision

---

[1] In view of the Court's holding that the payments are excluded from the estate under § 541(a)(6), the Court will not address the debtor's argument that the payments are excluded under § 541(c)(2) or exempt under Illinois law.

to participate in the Voluntary Separation Incentive Program ("VSI Program" or "Program"), the Department of Defense issued a "Certificate of Release or Discharge from Active Duty" ("Form 214") on or about September 3, 1992.

Pursuant to Form 214, the debtor was officially released from active duty and was awarded annual VSI payments in the amount of $12,689.04 for twenty-six years. The amount of debtor's annual VSI payments was later recalculated and increased to $13,985.75 and the duration for receiving the payments was extended through and including 2020.

Upon his separation from active duty, the debtor was immediately assigned to the Ready Reserve.[2] During his service in the Ready Reserve, debtor performed various duties and functions and in the course of doing so, was promoted to the rank of Major in February 1997. As he approached his sixtieth birthday in March 2015, the debtor was transferred from the Ready Reserve to the Retired Reserve, in which he presently continues to serve.

The parties agree that as a member of the Retired Reserve, the debtor is subject to recall to active duty under the circumstances set forth in 10 U.S.C. § 12301. That statute provides, in relevant part, as follows:

> In time of war or of national emergency declared by Congress, or when otherwise authorized by law, an authority designated by the Secretary concerned may, without the consent of the persons affected, order … any member … of a reserve component under the jurisdiction of that Secretary to active duty for the duration of the war or emergency and for six months thereafter…. [A] member on an inactive status list or in a retired status may not be ordered to active duty under this subsection unless the Secretary concerned, with the approval of the Secretary of Defense … determines that there are not enough qualified Reserves in an active status or in the inactive National Guard in the required category who are readily available.

---

[2] The U.S. Army Reserve is divided into the following three categories: a Ready Reserve, a Standby Reserve and a Retired Reserve. 10 U.S.C. § 10141(a).

2

10 U.S.C. § 12301(a). The parties also agree that the debtor is potentially subject to the Uniform Code of Military Justice and could be tried by military court martial without the constitutional safeguards that are afforded to civilian citizens. 10 U.S.C. § 802(a)(5); Army Regulation 27-10 (Military Justice), Ch. 20 § 20-3 (May 2016)    Finally, the parties agree that should the debtor cease serving in the Retired Reserve, he would automatically forfeit his right to receive any and all future VSI payments.

Since the filing of his chapter proceeding on March 14, 2016, the debtor has received one annual VSI payment in the amount of $13,985.75. If he continues to serve as a member of the Retired Reserve, he will be entitled to receive additional annual VSI payments in the amount of $13,985.75 each during the calendar years 2017 through 2020, for a total of $55,943.00. This amount, when combined with the VSI payment already received by the debtor, would represent a total of $69,928.75 in VSI payments.[3]

*The VSI Program*

Under the VSI Program, eligible military personnel who served less than the fully twenty years required to obtain retirement pay were allowed to separate from active duty in the military and receive VSI payments in lieu of the retirement pay they would have received if they remained in the military for twenty years or longer. *See generally* 10 U.S.C. § 1075.[4]    To participate in the VSI Program, a member of the armed forces was required to have at least six

---

[3] In the Joint Stipulation of Facts, the parties calculate the total amount as $69,478.75, but the Court believes that this figure is either a typographical error or the result of miscalculation. In either event, the discrepancy in figures is of no consequence to the Court's decision in this case.

[4] The Secretary of Defense was prohibited by statute from approving additional requests for participation in the VSI Program after December 31, 2001. 10 U.S.C. § 1175(d)(3).

years of active duty service (but not more than twenty), and to have at least five years of continuous active duty immediately preceding the date of separation. 10 U.S.C. § 1075(b)(1) & (2). In addition, the member was subject to "other requirements as the Secretary may prescribe from time to time, which may include requirements relating to (A) years of service; (B) skill or rating; (C) grade or rank; and (D) remaining period of obligated service." 10 U.S.C. §1075(b)(3). Participants in the VSI Program receive annual payments over a period equal to twice the number of years the member has served in the military. 10 U.S.C. § 1175(a)(2)(A).[5]

To continue receiving VSI payments, participants in the Program must, subject to certain limited exceptions, serve in the Ready or Standby Reserve until they reach a specified age, at which time they are transferred to and required to serve in the Retired Reserve. Continued service in a Reserve is required by statute[6] and by the Department of Defense Financial Management Regulations.[7]

*Discussion*

The debtor contends that his VSI payments are excluded from the bankruptcy estate under § 541(a)(6) of the Bankruptcy Code as "earnings from services performed by an individual

---

[5] Although there have been no new participants in the VSI Program since December 31, 2001, VSI payments are still being paid to those members who were approved for participation in the Program prior to that date.

[6] Section 1175(a)(2)(B) provides, in part, that "[i]f, before the expiration of the period otherwise applicable under subparagraph (A) … the member is separated from a reserve component or is transferred to the Retired Reserve, the period for payment of a financial incentive to the member … shall terminate on the date of the separation or transfer unless … the separation or transfer is required by reason of the age or number of years of service of the member…." 10 U.S.C. § 1175(a)(2)(B).

[7] Specifically, these regulations provide that a member electing to receive VSI payments "must accept voluntary appointment or enlistment in, or transfer to the Ready Reserve of a Reserve Component, and must continue to serve in a Reserve Component during the entire period of eligibility for VSI [payments]." DoD Fin. Mgmt. Reg. Vol. 7A, Ch. 35, 350801(F) (June 2010).

debtor after the commencement of the case." 11 U.S.C. § 541(a)(6).[8] In support of his argument, the debtor cites the Seventh Circuit's decision in *Matter of Haynes*, 679 F.2d 718 (7th Cir. 1982), *cert. denied*, *Miller v. Haynes*, 459 U.S. 970, 103 S.Ct. 299 (1982).

The debtor in *Haynes* retired from the Navy after completing twenty years of service. Upon retiring, the debtor was transferred to the Fleet Reserve and began receiving retainer pay. He was later transferred to the retired list of the Regular Navy, at which time his retainer payments ceased and he began receiving retirement pay. In a subsequently filed chapter 7 case, the trustee sought an order requiring the debtor to turn over his retirement pay to the bankruptcy estate. The bankruptcy court held that the debtor's retirement pay constituted proceeds for services performed after the bankruptcy petition was filed and as such, was not estate property under § 541(a)(6) of the Bankruptcy Code. *Matter of Haynes*, 679 F.2d at 718.

On appeal, the Seventh Circuit affirmed. The Court found that after Haynes became a retired member of the Regular Navy, he could be recalled to active duty in time of war or national emergency and further, that he remained subject to the Uniform Code of Military Justice. Given the ongoing nature of these obligations, the Court found that "military retirement pay is actually reduced compensation for reduced current services." *Id*. at 719. The Court explained:

> Under most pension plans, the retiree is not required to perform any services for his former employer. The military retiree, however, remains obligated to the federal government to perform certain duties. If the retiree fails to perform these duties, his retirement benefits may be terminated….In light of the obligations imposed on a military retiree as conditions of receipt of retirement pay, military retirement is actually reduced compensation for

---

[8] Section 541(a)(6) provides that property of the estate includes "[p]roceeds, product, offspring, rents, or profits of or from property of the estate, except such as are earnings from services performed by an individual debtor after the commencement of the case." 11 U.S.C. § 541(a)(6).

5

> reduced current services.  Haynes' retirement pay is proceeds for services performed after the filing of the bankruptcy petition, and, thus, it is not property of the estate.

*Id*. (citations omitted).

The trustee argues that *Haynes* is factually distinguishable from the instant case. Specifically, the trustee contends that in *Haynes*, the debtor was required to perform affirmative acts to receive his retirement pay, including (1) performing up to two months of active duty training every four years; (2) reporting for physical examination every four years; (3) reporting for active duty in time of war or during national emergency; and (4) remaining subject to the Uniform Code of Military Justice.  A review of the facts in *Haynes*, however, reveals that the debtor was subject to all four obligations *only* during the time he was receiving retainer pay as a member of the Fleet Reserve.  The first two obligations - performing two months of active duty training every four years and reporting for physical examinations – ceased when the debtor was transferred out of the Fleet Reserve and began receiving the retirement pay that was ultimately held to be excluded from the bankruptcy estate.  This is evident from the facts set forth by the Court:

> From 1971 to 1981, Haynes received retainer pay for serving in the Fleet Reserve.  As a member of the Fleet Reserve, Haynes was required to perform up to two months of active duty training every four years … [and] was also required to report to the Navy for a physical examination at least once every four years….Moreover, Haynes was subject to recall to active duty in time of war or during a national emergency….He also remained subject to the Uniform Code of Military Justice….In 1981 after Haynes became a retired member of the Regular Navy, he remained subject to the Uniform Code of Military Justice … and could be recalled to active duty in time of war or national emergency.

*Id*.  In other words, to continue receiving his retirement pay, the debtor in *Haynes* had *the very same ongoing duties and burdens as the debtor has in the instant case*, namely, to stand ready

6

for recall to active duty and to remain subject to the Code of Military Justice. Accordingly, the trustee's argument that the debtor "is not required to perform the same or similar acts that the debtor had to perform in *Haynes*, or any affirmative acts for that matter"[9] is without merit. *See also In re Siverling*, 72 B.R. 78 (Bankr.W.D.Mo. 1987) (citing *Haynes*, court finds that because military retirees are subject to recall to active duty and subject to the Uniform Code of Military Justice, their retirement pay is reduced compensation for reduced services and therefore excluded from the bankruptcy estate under § 541(a)(6)).

The trustee further argues that the debtor's reliance on *Haynes* is misplaced because subsequent decisions have abrogated and narrowed the holding in *Haynes*. The trustee cites *In re Jokiel*, 447 B.R. 868 (Bankr.N.D.Ill. 2011) as an example. In *Jokiel*, a pre-petition agreement between the debtor and his employer provided that upon termination from employment, the debtor would receive severance pay if he agreed not to compete with his former employer and if he signed a release of whatever claims he may have against the employer. After filing a chapter 7 petition, the debtor's employer merged with another company, and as a result of the merger, debtor's job was terminated. The chapter 7 trustee sought turnover of the severance payments, arguing that the payments constituted property of the estate. Debtor responded, in part, that the severance payments constituted compensation for services performed post-petition, those services being "not competing" and "releasing potential claims." *Id*. at 873. The debtor relied on *Haynes*, arguing that the exclusion under § 541(a)(6) covers "even minimal obligations." *Id*.

The *Jokiel* court rejected the debtor's argument, finding that the facts in *Haynes* were distinguishable. Specifically, the court found that the debtor in *Haynes* had "*continuing obligations* such as … the continuing possibility of being recalled to active duty in time of war or

---

[9] Trustee's Memorandum of Law in Support of Motion for Turnover, p. 3.

national emergency." *Id*. (emphasis added). "[T]he duties in *Haynes* required affirmative acts by the debtor…." *Id*. The court found that an agreement not to compete was not a "service" for purposes of § 541(a)(6), nor was releasing a claim. *Id*. "Like an agreement not to compete, releasing a claim is essentially an agreement *not* to do something - not to bring a claim….While the physical act of signing the release might have constituted an affirmative act, it does not rise anywhere near the level of even the minimal duties found sufficient in *Haynes*." *Id*. (emphasis in original). In short, the court concluded that abstaining from action or "not engaging in certain specified activities" do not qualify as "services performed" under § 541(a)(6). *Id*.

This Court disagrees with the trustee's argument that the *Jokiel* decision somehow abrogates or narrows the Seventh Circuit's holding in *Haynes*. Bankruptcy courts within the Seventh Circuit are bound by the decisions of the Seventh Circuit Court of Appeals. The *Jokiel* case, decided by the Bankruptcy Court in the Northern District of Illinois, does not and cannot abrogate the *Haynes* decision. Furthermore, *Jokiel* does *not* represent a departure or limitation on the holding in *Haynes*. As discussed above, the *Jokiel* case concerned the right of a bankruptcy civilian employee to receive a severance bonus under a pre-petition employment contract with a private employer. There was no reason for the court to re-examine the holding in *Haynes*, nor did it. Instead, the court distinguished the facts in *Haynes* and based on those differences, found that *Haynes* did not apply.

The trustee also cites the Seventh Circuit's decision in *Matter of Prince*, 85 F.3d 314 (7th Cir. 1996) to support her argument that the *Haynes* decision has been abrogated. *Prince* was a chapter 11 proceeding in which the court was asked to value the stock of the debtor's orthodontics practice and to determine whether the goodwill of the practice was excluded from the estate under the earnings exception of § 541(a)(6). The court stated:

8

> The courts have interpreted the postcommencement earnings exception extremely narrowly, holding that § 541(a)(6) excepts only earnings from services actually performed by an individual debtor after the date of commencement [of the bankruptcy case] and that cash flows representing return on capital assets (even intangible ones) are not earnings from services of the debtor.

*Id*. at 323 (citations omitted). The court found that while "[t]he value of earnings from future services performed by Dr. Prince are excluded from the bankruptcy estate … [t]he value of Dr. Prince's goodwill represents future cash flows not from earnings for future services actually performed … but from return on an intangible capital asset that could be sold and transferred with the sale of the practice." *Id*. at 323-24.

The facts and issue in *Prince* were clearly different from those in the instant case. While the trustee relies on the language in *Prince* that the earnings exception has been narrowly interpreted, that language alone does not support the conclusion that *Haynes* is no longer good law. The holding in *Haynes* remains binding precedent in this circuit and clearly applies to the facts in the instant case. Based on the reasoning and holding in *Haynes*, the debtor's VSI payments are excluded from the bankruptcy estate under § 541(a)(6) and, accordingly, the trustee's motion for turnover of those payments is DENIED.

See Order entered this date.

ENTERED: January 23, 2017

/s/ Laura K. Grandy
UNITED STATES BANKRUPTCY JUDGE